UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                    18-cr-845 (PKC)

     -against-

                                              OPINION
                                              AND ORDER

JAMES WOODSON,

                       Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.:

        Defendant James Woodson pled guilty to one count of healthcare fraud, and this Court sentenced him principally to a term of imprisonment of 1 year and 1 day. (Nov. 26, 2019 Sentencing Tr. (Doc 41).) Woodson, by his counsel, has filed an emergency motion for a sentence reduction pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), signed into law on December 21, 2018. He argues that, due to the pandemic presently striking the nation and the City of New York, he has an enhanced risk of contracting COVID-19 at the Metropolitan Correctional Center ("MCC") in Manhattan and, were he to contract the disease, his preexisting conditions would make it life-threatening to him.

        The Court concludes that the First Step Act provides a 30-day window for the Bureau of Prisons ("BOP") to act and, only if a prisoner has exhausted his BOP administrative remedies or 30-day period has expired, may a prisoner make application to the Court. The Court denies Woodson's application without prejudice and with the admonition to the BOP that if it anticipates that it will be unable to address Woodson's application on its merits, it should deny the application now so that the Court may consider Woodson's motion.

BACKGROUND

        Woodson pled guilty to one count of healthcare fraud in violation of 18 U.S.C. §§ 1347 and 2. (Feb. 22, 2019 Plea Tr. (Doc 17)).) Woodson, a recipient of Medicare and Veteran's Administration ("VA") benefits, fraudulently obtained and filled hundreds of prescriptions for antiretroviral drugs and medications for an autoimmune deficiency. Woodson received an excess supply of these medications using dozens of different pharmacies and doctors, filling the same prescriptions for medications through Medicare Part D and the VA, and "plan-hopping" among Medicare plans. Woodson then resold these drugs on the black market. (Presentence Investigation Report ("PSR") ¶¶ 13-18, 20-21.) Medicare paid approximately $815,502.39 for these excessive prescriptions that Woodson resold. (Id. ¶ 19.) Woodson's criminal acts diverted valuable resources of medical doctors, healthcare providers, pharmacies, and Medicare plans.

        Woodson faced a Sentencing Guidelines range of imprisonment of 27 to 33 months. (PSR at 21.) But, on November 26, 2019, this Court sentenced Woodson to a below Guidelines sentence of principally 1 year and 1 day imprisonment,[1] to be followed by 3 years of supervised release. The Court further ordered Woodson to pay restitution in the amount of $815,502.39. (Doc 41.) The Court initially ordered Woodson to surrender to the BOP on January 14, 2020, but later extended that date, at Woodson's request, to February 4, 2020, at or before 2:00pm. (Memo Endorsement of Jan. 9, 2020 (Doc 43).) Woodson began serving his sentence on February 5, 2020, at the Metropolitan Correctional Center ("MCC"), where he

---

[1] By sentencing Woodson to a term that exceed one year by a single day, he became eligible to receive "good time" credit from the Bureau of Prisons ("BOP"). 18 U.S.C. § 3624(b).

remains incarcerated. With good conduct credit, Woodson is projected to be released on December 12, 2020.

As noted, Woodson now requests reduction of his sentence pursuant to the First Step Act. (Doc 44.) He seeks release from the MCC to serve the remainder of his custodial sentence on home confinement. The government opposes the motion.

DISCUSSION

There is a threshold disagreement as to whether Woodson must exhaust his administrative remedies or whether the exhaustion requirement may be dispensed with in view of the current national emergency. The statute requires a defendant to fully exhaust his remedies within the BOP but places a 30-day limit on the time a defendant must wait before heading to Court. The First Step Act sets forth the following procedure for seeking a sentence reduction for "extraordinary and compelling reasons":

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).[2]

---

[2] The United States Sentencing Commission has issued a Policy Statement on "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)." U.S.S.G. § 1B1.13 (Policy Statement). The Application Notes state in part that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community."

The plain language of the statute is free from ambiguity.  The BOP may make a sentence reduction application to the Court at any time.  A defendant, however, is required to "fully exhaust[] all administrative rights to appeal."  But, recognizing that administrative agencies may not act with expedition, the statute places a brief outside limit on the time for BOP to act.  If the BOP does not act favorably on the defendant's request after 30 days, the exhaustion requirement is dispensed with and the defendant may bring his application to the Court.  If the BOP denies the defendant's application in fewer than 30 days, then the defendant may immediately apply to the Court.

Woodson states that he first submitted an internal request to the BOP on March 18, 2020.  (Def. Mot. (Doc 44) at 11.)  Having received no response, Woodson submits that he made another request a few days later.  (Def. Reply (Doc 49) at 4, n.2.)  The parties represented to the Court that the BOP does not have a record of these requests.  Woodson's counsel submitted a request to the MCC Legal Department via email on March 27, 2020.  (Doc 49, Ex. A.)  Even assuming the 30-day window began on March 18, it has not yet expired.  However, Woodson urges the Court to "waive" the exhaustion requirement.

Generally, there are two kinds of exhaustion requirements: statutory and judicially-created.  This distinction can be "pivotal . . . because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions."  Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir. 2003).  Where an exhaustion requirement is judicially-engrafted onto a statutory scheme, the judge-made rule of exhaustion is subject to judge-made exceptions.  Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998); see also McCarthy v. Madigan, 503 U.S. 140, 146 (1992) (recognizing "at least three broad sets of circumstances in which the interests of the individual weigh heavily against

requiring administrative exhaustion."), superseded by statute on other grounds as recognized in Booth v. Churner, 532 U.S. 731, 739-41 (2001); Washington v. Barr, 925 F.3d 109, 115; 118-19 (2d Cir. 2019) (noting that the relevant statute did "not expressly mandate the exhaustion of administrative remedies" and listing exceptions to the exhaustion requirement, citing McCarthy).

But "[a]s a general rule, courts are required to strictly enforce statutory exhaustion requirements." Theodoropoulos v. INS, 358 F.3d 162, 172 (2d Cir. 2004). Where Congress has with sufficient clarity mandated exhaustion, courts "will not read . . . exceptions" into statutes. Booth, 532 U.S. at 741, n.6; Theodoropoulos, 358 F.3d at 172-73. Lawmakers who created the statutory right of a convicted defendant to bring an application to reduce his sentence placed a limitation on his right to do so. Giving the BOP the opportunity to speak first may obviate the need for judicial action where a defendant's application is granted. If the BOP denies a defendant's application, the BOP's decision may inform the Court of why the agency does not consider the relief warranted. The present national health emergency makes thoughtful and considered input from the BOP all the more valuable in avoiding unwarranted disparities among convicted defendants.[3]

Woodson argues that the landscape changed with the Second Circuit's decision in Washington v. Barr, 925 F.3d 109, 118-19 (2d Cir. 2019). In Barr, a divided panel affirmed the district court's determination that administrative exhaustion was required where plaintiffs, who relied on medical marijuana for a variety of debilitating health conditions, challenged the classification of marijuana as a Schedule I drug under the Controlled Substances Act ("CSA"). Id. at 113. Quoting McCarthy v. Madigan, 503 U.S. 140, 144 (1992), the Court observed that

---

[3] During the pandemic, lawmakers have made welcomed changes to particular rules governing video teleconferencing of certain criminal proceedings. Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Public Law 116-136. But no change has been made to section 3582(c).

- 5 -

when "'Congress specifically mandates [it], exhaustion is required. . . . But [even] where Congress has not clearly required exhaustion,' a court may still impose it as an act of 'sound judicial discretion.'" Id. at 116 (alterations in original). The Court applied an exhaustion requirement to the plaintiffs' claim as "a prudential rule of judicial administration." Id. at 115.

Thus, Washington v. Barr is not a statutorily-mandated exhaustion case. It addressed a judge-made exhaustion requirement which was subject to judge-made exceptions. But there is a sentence in the majority's opinion that is relied upon by Woodson. The panel majority wrote: "Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." Id. at 118. The panel majority went on to note that "[t]he Supreme Court itself has recognized exceptions to the exhaustion requirement under 'three broad sets of circumstances.'" Id. (quoting McCarthy, 503 U.S. at 146). While McCarthy lays out three exceptions to non-statutorily mandated exhaustion, it does not expressly address exceptions to statutorily-mandated exhaustion. McCarthy addressed a judge-made exhaustion rule applicable to a non-statutory claim for relief under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). 503 U.S. at 143-44. The passing reference to "exhaustion [that] is seemingly mandated by statute . . . is not absolute" in Barr was not necessary to the Court of Appeals' holding. 925 F.3d at 118.[4]

The Court is mindful that judges within this Circuit have not been unanimous on whether section 3582(c) exhaustion is required in the present context. Compare Order at 4-5,

---

[4] The Supreme Court has recognized that, at least in one context, statutory exhaustion would not be required if the agency could not grant the relief sought because there would be "nothing to exhaust." Booth, 532 U.S. at 736 n.4 Relying on Booth, the Second Circuit has recognized an exception to statutory exhaustion in the immigration context, and invoked it to avoid "manifest injustice." Theodoropoulos, 358 F.3d at 172-73 (recognizing "limited circumstances in which an exception to the general rule might apply," citing Booth); Marrero Pichardo v. Ashcroft, 374 F.3d 46, 52-53 (2d Cir. 2004) (recognizing the "exceedingly narrow exception" to statutorily-mandated exhaustion and invoking it "to prevent manifest injustice.")

United States v. Russo, No. 16-cr-441 (LJL) (S.D.N.Y. Apr. 3, 2020), ECF No. 54 (deferring ruling on defendant's motion "including on the Government's argument that Mr. Russo must exhaust administrative remedies or wait 30 days before the Court can reduce his sentence."); United States v. Resnick, No. 12-cr-152 (CM), 2020 WL 1651508, at *5-*6 (S.D.N.Y. Apr. 2, 2020) (court could consider defendant's motion for compassionate release after expiration of 30-day period from defendant's initial request submitted to BOP); United States v. Gagne, No. 18-cr-242 (VLB), 2020 WL 1640152, at *4-*5 (D. Conn. Apr. 2, 2020) (finding defendant not excused from exhausting administrative remedies); United States v. Hernandez, No. 19-cr-834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020) (denying relief where defendant did "not appear to have sought any such relief within the Bureau of Prisons, let alone exhausted his administrative remedies)[5]; United States v. Gileno, No. 19-cr-161 (VAB), 2020 WL 1307108, at *3-*4 (D. Conn. Mar 19, 2020) (noting that defendant had not exhausted administrative remedies, denying application without prejudice to renewal after exhaustion); Monzon, 2020 WL 550220, at *2 (subject to the 30-day limit, exhaustion required under section 3582(c)(1)(A)), with United States v. Colvin, No. 19-cr-179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (citing Washington v. Barr and waiving exhaustion requirement where defendant had eleven days of custodial sentence remaining); United States v. Perez, No. 17-cr-513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020) (citing Washington v. Barr and concluding that section 3582(c)(1)(A) is subject to exceptions).

---

[5] Mr. Hernandez then made an application to the BOP, the BOP denied his request, and Judge Engelmayer then issued an order granting Mr. Hernandez's motion for compassionate release to home confinement. Opinion & Order at 2-4, United States v. Hernandez, No. 18-cr-834 (PAE) (S.D.N.Y. Apr. 2, 2020), ECF No. 451.

CONCLUSION

Woodson's motion for sentence reduction is DENIED without prejudice. The Clerk is directed to terminate the motion (Doc 44). The Court expresses the hope that the BOP will state its position in a reasoned determination of Woodson's application. If the BOP anticipates that it will be unable to address the merits of Woodson's application, it should deny his application now and thereby open his pathway to seek judicial relief. For the agency to make the advance decision to allow the 30-day window to run out, but not to act to deny the application would be irresponsible.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 6, 2020